**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LINDA A. LEENSTRA,                )         Civil Action No.: 10-5909 (JLL)
                                  )
            Plaintiff,            )              **OPINION**
                                  )
v.                                )
                                  )
RICHARD THEN, BRIAN KITHCART,     )
PHILLIP COLEMAN, ANDOVER          )
TOWNSHIP, JOHN DOE 1-10 (A        )
FICTITIOUS NAME), JOHN ROE        )
SUPERVISING OFFICER 1-10 (A       )
FICTITIOUS NAME), ABC CORP. 1-10  )
(A FICTICIOUS NAME),              )
                                  )
            Defendants.           )

**LINARES**, District Judge.

This matter comes before the Court by way of a Motion for Summary Judgment filed by Defendants on November 12, 2012. The Court has considered the Defendants' submission in support of the present motion and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' motion is granted.

## I.    BACKGROUND

### A.    Facts

Linda A. Leenstra ("Leenstra" or "Plaintiff") has a history of mental illness and has been diagnosed with Borderline Personality Disorder, Bipolar Disorder, Massive Depressive Disorder,

and Generalized Anxiety Disorder. Defs. SOF at ¶¶ 9-10. On at least three occasions, Plaintiff was hospitalized for mental health emergencies resulting from her mental health impairments. *Id.* at ¶ 11.

On November 14, 2008, Plaintiff's therapist, Sheri Gibson, received a text from Plaintiff's phone number reading, "Do you think today's a good day to die? I do." *Id.* at ¶ 19. Gibson called Plaintiff and left a voicemail indicating that if Plaintiff did not return Gibson's call, Gibson would contact the police. *Id.* at ¶ 22. After several minutes without receiving a response, Gibson notified a police dispatcher that Plaintiff sent a suicidal text message and requested that the police conduct a welfare check. *Id.* at ¶ 23. The dispatcher attempted to call Plaintiff, while defendants Richard Then and Brian Kithcart went to Plaintiff's home to conduct a welfare check. *Id.* at ¶¶ 24, 27.

When Then and Kithcart first arrived, Plaintiff was not home. *Id.* at ¶ 27. The dispatcher contacted Plaintiff's husband and was told that Plaintiff was located at Sussex County Vo-Tech High School. *Id.* at ¶ 28. The dispatcher then contacted the Sparta police and "asked them to make a welfare check on the plaintiff at Sussex Vo-Tech." *Id.* at ¶ 29. When the Sparta police arrived, they contacted Plaintiff's husband, and were told that Plaintiff was "fine" and "back at home." *Id.* at ¶ 30.

Then and Kithcart then returned to Plaintiff's residence. *Id.* at ¶ 32. "Then was equipped with a recorder that recorded audio over the course of the next hour in the Leenstra residence."[1] *Id.* at ¶ 33. The officers entered the home, where they were met by Plaintiff's husband who indicated that Plaintiff was "fine." *Id.* at ¶¶ 38-39. Then moved towards Plaintiff and "calmly"

---

[1] Defendants attached a copy of the audio recording to their Motion for Summary Judgment.

asked about her text message. *Id*. at ¶ 41.  She indicated that she was upset and returned to her room. *Id*. at ¶¶ 41-42.

Plaintiff's husband repeated that Plaintiff was fine and warned that the officers were just going to create more problems. Defs. SOF at ¶ 43.  Then stated that he just needed to make sure she was okay, and Plaintiff's husband conveyed this message to Plaintiff. *Id*. at ¶¶ 43, 45.  Then and Kithcart entered Plaintiff's bedroom, and Then again asked about the text message. *Id*. at ¶ 48.  Plaintiff responded, "I don't know.  I think it's a good day to die.  That's the text message I sent.  It's my fucking opinion." *Id*. at ¶ 49.  The officers asked follow up questions, and Then requested Emergency Medical Services ("EMS") to "transport Ms. Leenstra to the hospital for evaluation based on her suicidal text message and the suicidal statement she repeated in his presence." *Id*. at ¶¶ 50, 54.

After Then contacted the EMS, Plaintiff grabbed her jacket and moved toward the door to her bedroom. *Id*. at ¶ 57.  Then told Plaintiff that she was "not going anywhere," and Plaintiff responded that the officers should "Get out of [her] house!" *Id*. at ¶ 58.  Then interpreted her grabbing the jacket as a "possible attempt to exit the home," so Then restrained Plaintiff by grabbing her arm. *Id*. at ¶ 59.  Plaintiff and Plaintiff's husband allege that Plaintiff informed the officers that Plaintiff was just reaching for a cellphone in her jacket pocket so that she could contact her therapist; however, "the police recording does not contain any mention of a cell phone or a therapist in the moments before or after Officer Then first grabbed the plaintiff." *Id*. at ¶ 60.

After Then grabbed Plaintiff, Plaintiff struggled, and Plaintiff and Then fell to the floor. *Id*. at ¶ 61.  Then and Kithcart then struggled with Plaintiff for several minutes in an attempt to restrain her. *Id*. at ¶ 62. Both officers "complained about being kicked at various times

3

throughout the incident," and one is recorded saying "Stop kicking me." Defs. SOF at ¶¶ 63-64. Then and Kithcart attempted to handcuff Plaintiff, and Plaintiff complained that they were "breaking" her shoulder. *Id.* at ¶ 68. Plaintiff had pre-existing shoulder tendonitis, but the officers were unaware of this condition at the time of the incident. *Id.* at ¶ 69. The officers finally secured Plaintiff in "two sets of handcuffs, which were necessary due to her size." *Id.* at ¶ 70. As they began escorting Plaintiff out of the house, Plaintiff kicked "Kithcart in the groin and Then in the interior left knee and lower leg." *Id.* at ¶ 71. Defendants provided the Court photographs showing bruises sustained by one the officer. Defs. Ex. 20.

Kithcart and Then then notified Plaintiff that she was under arrest for assault, and took her to the front of the house to wait for EMS. Defs. SOF at ¶¶ 75-76. After an EMS worker arrived, Plaintiff asked the EMS worker to remove her handcuffs. *Id.* at ¶¶ 77-78. Kithcart and Then initially denied her request, but, within three minutes, moved the handcuffs to a "more comfortable position in the front of the plaintiff's body." *Id.* at ¶ 78. While the EMS technician evaluated Plaintiff, Plaintiff made numerous suicidal statements including two proclaiming "I want to die." *Id.* at ¶ 79. Plaintiff was then taken by ambulance to Newton Memorial Hospital, where she was handcuffed to a bed. *Id.* at ¶¶ 80, 82.

At the hospital, Plaintiff screamed and wrapped a cord around her neck. *Id.* at ¶ 83. Hospital nurses contacted Then and Kithcart, who were waiting outside her room. *Id.* at ¶ 84. They entered and removed the cord, during which time Plaintiff "spat on them." *Id.* at ¶ 86. Then and Kithcart then sought and obtained a warrant for "plaintiff's arrest on two counts of aggravated assault and two counts of assault on a police officer by throwing bodily fluids." *See id.* at ¶ 88. Plaintiff was released from the hospital, arrested by Detective Eric Danielson, and transported to the county jail. *Id.* at ¶ 89. Plaintiff was subsequently taken to the Keogh-Dwyer

4

Correctional Facility in lieu of bail, and Plaintiff was released the next day.  Defs. SOF at ¶ 90.

All charges against Plaintiff were subsequently dropped.  *Id.* at ¶ 91.

**B.      Procedural History**

On November 14, 2010, Plaintiff filed a six count complaint against the following

Defendants:  Then; Kithcart; Phillip Coleman, the Chief of the Andover Township Police

Department at the time of the incident; Andover Township; John Doe 1-10, "fictitious

persons/law enforcement officers whose identity" was unknown at the time; John Roe

Supervising Officers 1-10, fictitious supervising officers in the Andover Township Police

Department; and ABC Corp. 1-10, "fictitious names for entities who were responsible of the

investigation and/or enforcement of the laws within Andover Township."[2]  *See* Compl. at 2-3.

Among other things, Plaintiff alleges that Defendants violated her federal and state constitutional

rights, committed false imprisonment/false arrest, and engaged in civil conspiracy. *See id.* at 8,

10, 12, 13.

On October 12, 2012, Defendants filed the present Motion for Summary Judgment

requesting judgment in their favor on each of Plaintiff's six counts.  Plaintiff was given fourteen

days to file her motion in opposition but was granted a fourteen day extension as a matter of

right.  Plaintiff requested an additional fourteen day extension in light of inclement weather, and

the Court promptly granted her request and extended Plaintiff's deadline to November 19, 2012.

*See* Nov. 19, 2012 Order.  Plaintiff has not filed a motion in opposition or requested a third

---

[2] Plaintiff did not amend her complaint to identify these fictitious defendants, and Plaintiff's
deadline to amend her complaint or add additional parties has past.  Plaintiff has not presented
any evidence of any wrong committed by any fictitious officer or Andover Township entity, and
discovery in this matter is closed.  Accordingly, Plaintiff's claims against these fictitious
defendants cannot survive summary judgment.  Moreover, even if Plaintiff had identified the
fictitious defendants, these defendants would be entitled to summary judgment in their favor for
the same reasons set forth below for the named defendants.

extension. The Court therefore treats Defendants' Motion for Summary Judgment as unopposed. And, after a careful review of the materials in support of Defendants' motion, including audio recordings of the incident at issue, the Court grants Defendants' Motion for Summary Judgment.

## II.   LEGAL STANDARD

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 744 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex*, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex. Rel. M.E.,* 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## III.   DISCUSSION

### A.   Counts One, Two and Three – Federal and State Constitutional Law Claims

In Counts One, Two, and Three of Plaintiff's complaint, Plaintiff alleges that Then, Kithcart, Coleman, John Roe Supervising Officer 1-10, and Andover Township violated the New Jersey State Constitution as well as the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. *See* Compl. at 8-12. For the reasons that follow, Defendants are entitled to summary judgment in their favor as to each of these counts.

### 1.   Claims Against Then and Kithcart

Defendants argue that Then and Kithcart are entitled to qualified immunity as to each of Plaintiff's state and federal constitutional law claims against them. Defs. Br. at 7. Qualified immunity applies to claims under both the United States and the New Jersey constitutions. *Ramos v. Flowers*, No. A-4910-10T3, 2012 N.J. Super. LEXIS 157, at *14 (N.J. Sp. Ct. App. Div. filed Sept. 21, 2012). Police officers performing discretionary functions are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts recognize that police officers must often make split second decisions and can make mistakes in the process. *See Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 204-05 (2001)). Accordingly, the qualified immunity afforded to police officers encompasses "mistaken judgments that are not plainly incompetent." *Id.* Whether a police officer's mistake is reasonable and he is thus entitled to qualified immunity is a "question of law that is properly answered by the court, not a jury." *Curley v. Klein*, 499 F.3d 199, 211 (3d Cir. 2007).

Here, Plaintiff alleges numerous violations of the United States and New Jersey constitutions. As Count One, Plaintiff argues that Then and Kithcart violated her federal constitutional rights by detaining her, searching her home, using excessive force, "unjustifiably

7

creating a danger and undue risk to Plaintiff's life and limb," falsely arresting and imprisoning

Plaintiff, maliciously prosecuting Plaintiff, and denying Plaintiff "Equal Protection of the Law."

*See* Compl. at 9.  As Count Two, Plaintiff alleges that the officers deprived her of her

"substantive due process, equal protection rights, [and] privileges and/or immunities" secured by

the federal and state constitutions. *See id*. at 10-11.  And, as Count Three, Plaintiff alleges that

the officers violated her state constitutional rights by "falsely arresting Plaintiff, illegally seizing

the person of Plaintiff, maliciously prosecuting Plaintiff, using excessive force, and conspiring to

commit the acts aforesaid." *See id*. at 11.  For the reasons discussed below, Plaintiff's

allegations are insufficient to establish a "violation of a constitutional or statutory right," and the

officers are entitled to summary judgment in their favor. *See Harlow*, 457 U.S. at 818.

### a.     Detaining Plaintiff without probable cause

In Counts One and Three of Plaintiff's complaint, Plaintiff alleges that she was seized

and detained without probable cause and in violation of her United States and New Jersey state

constitutional rights. *See* Compl. at 9, 11 (stating that Defendants violated Plaintiff's rights by

"illegally seizing the person of Plaintiff").  Plaintiff was detained on two separate occasions.

First, Then and Kithcart detained her and took her to the hospital for a mental health evaluation.

*See* Defs. SOF at ¶ 80.  Second, Plaintiff was arrested and taken by Detective Danielson to the

county jail where she was later transferred to an additional facility. *See id*. ¶¶ 89-90.  Then and

Kithcart's conduct in each of these detainments does not violate a clear statutory or constitutional

right, so each officer is entitled to summary judgment in his favor. *See Harlow*, 457 U.S. at 818.

First, Then and Kithcart detained Plaintiff for a mental health evaluation.  N.J.S.A. 30:4-

27.6 permits a law enforcement officer to "take custody of a person and take that person

immediately and directly to a screening service if, on the basis of personal observation, the law

8

enforcement officer has reasonable cause to believe that the person is in need of involuntary commitment to treatment." *See* N.J.S.A. 30:4-27.6; *see also Washington v. Glucksberg*, 521 U.S. 702, 730 (1997) ("The state has an interest in preventing suicides").  A person is in need of treatment if they are mentally ill, the illness causes them to be a danger to themselves, they are unwilling to go for treatment, and other available services will not meet the person's needs. *See* N.J.S.A. 30:4-27.6.  Here, the facts establish that Plaintiff was suffering from a mental illness and was unwilling to go for voluntary treatment.  Plaintiff made numerous suicidal statements to Then and Kithcart whereby they could reasonably believe that Plaintiff was a danger to herself and in need of hospitalization. *See, e.g.*, Defs. SOF at ¶ 79; *see also Roberts v. Anderson*, 213 F. App'x 420, 427 (6th Cir. 2007) ("Probable cause in the context of mental health requires only a showing that there is a probability or substantial chance of dangerous behavior, not an actual showing of such behavior.").  Accordingly, Then and Kithcart were reasonable in believing they acted in accordance with Plaintiff's statutory and constitutional rights and are thereby entitled to statutory immunity for their actions. *See Harlow*, 457 U.S. at 818.

Second, after Plaintiff completed her mental health evaluation and was released from the hospital, she was placed under arrest for assaulting Then and Kithcart. *See* Defs. SOF at ¶¶ 89-90.  Defendants argue that this arrest was properly conducted pursuant to a warrant issued by Judge Mulhern. Defs. Br. at 16.  It is unclear from the record, however, whether the officers received this warrant before or after the arrest.  Defendants' Statement of Facts indicates that the warrant was issued approximately 2 hours after Plaintiff's arrest.  Defs. SOF. at ¶¶ 88-89.  But, Kithcart's report states that the judge issued the warrant prior to Plaintiff's arrest. *See* Kithcart Report at 2.  The Court is required to resolve this dispute in favor of the non-moving party.  Even in doing so, Plaintiff's arrest was proper. *See Pennsylvania Coal Ass'n*, 63 F.3d at 236.  A

"warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). There is sufficient evidence in the record demonstrating that Plaintiff spit on Then and Kithcart thereby committing an assault. Defs. SOF at ¶ 86. Accordingly, Plaintiff fails prove a constitutional violation and Then and Kithcart are entitled to summary judgment in their favor. *See Harlow*, 457 U.S. at 818.

### b.  Searching Plaintiff's property without probable cause

In Count One, Plaintiff alleges that Then and Kithcart violated her constitutional rights by searching her property without probable cause. *See* Compl. at 9. Then and Kithcart entered Plaintiff's home on two occasions to conduct a mental health welfare check—once before she returned home and once after. Defs. SOF at ¶¶ 27, 38. Neither officer had a warrant when entering Plaintiff's home; however, the Fourth Amendment's warrant requirement contains an exception for exigent circumstances. *See Bringham City Utah v. Stuart*, 547 U.S. 398, 400 (2006). Officers can enter a home without a warrant when there is a need to "render emergency assistance to occupants of private property who are seriously injured or threatened with such injury." *Id*. Here, there is sufficient evidence whereby Then and Kithcart could believe this exception applied. Plaintiff had a history of mental illness and texted her therapist indicating that she thought it was a good day to die. Defs. SOF at ¶¶ 9, 19. Although Plaintiff's husband indicated that she was okay, Then and Kithcart were unable to speak directly with Plaintiff in order to verify her well-being. *See id*. at ¶ 28. Therefore, Then and Kithcart were reasonable in entering Plaintiff's home to protect her against a serious threat of self-injury, and are entitled to summary judgment in their favor. *See Bringham City Utah*, 547 U.S. at 400.

### c.  Using excessive force and restraining Plaintiff

In Counts One and Three of Plaintiff's complaint, Plaintiff alleges that Then and Kithcart violated Plaintiff's state and federal constitutional rights by using "excessive force and restraining Plaintiff." Compl. at 9, 11. Police officers are only permitted to use "reasonable" force in detaining an individual. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). The test for reasonableness is objective, but "should give appropriate scope to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'" *See id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Factors to consider in evaluating the reasonableness of the force are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he actively is resisting arrest or attempting to evade arrest by flight." *Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004).

Here, Then and Kithcart restrained Plaintiff, subdued her, and handcuffed her before she was transported to the hospital. The Court finds that the officers' use of force was objectively reasonable in light of the circumstances of Plaintiff's detainment. *See Groman*, 47 F.3d at 634. Then and Kithcart initially restrained Plaintiff when she grabbed her jacket and walked towards the door. Defs. SOF at ¶¶ 57, 59 (stating that they interpreted Plaintiff's actions as a "possible attempt to exit the home"). Plaintiff argues that she was retrieving a cellphone from her jacket pocket in order to contact her therapist; however, an audio recording of the incident does not contain any evidence supporting this version of the facts. *Id.* at ¶ 60. Plaintiff posed an immediate threat to her own safety in light of her suicidal statements, and an objectively reasonable person would believe she was attempting to flee. Accordingly, Then and Kithcart applied a reasonable amount of force in preventing her exit from the apartment. *See Kopec*, 361 F.3d at 776-77.

After Then and Kithcart restrained Plaintiff, Plaintiff began struggling with the officers. Defs. SOF at ¶ 62. Plaintiff screamed at the officers and kicked both offices on numerous occasions. *Id*. at ¶¶ 62, 64. Plaintiff was a larger woman, as is reflected in the need to use two sets of handcuffs to restrain her, and posed a flight and personal safety risk. *See id*. at ¶ 70. Accordingly, the Court cannot find that the officers' use of force to subdue the Plaintiff was excessive under these circumstances. *See Kopec*, 361 F.3d at 776-77. And, Plaintiff has not provide any evidence to the contrary.

Finally, Then and Kithcart handcuffed Plaintiff. Defs. SOF at ¶ 70. When doing so, Plaintiff screamed that the officers were "breaking" her shoulder. *Id*. at ¶ 68. Plaintiff suffered from shoulder tendonitis; however, there is no indication that either officer was aware of this impairment when handcuffing Plaintiff. *Id*. at ¶ 69. And, apart from this one statement, there is nothing in the record indicating that Plaintiff was in pain or conveyed her pain or discomfort to the officers. After being handcuffed, Plaintiff asked for the handcuffs to be removed. *Id*. at ¶ 78. Although the officers did not comply with that request, the facts show that within three minutes of Plaintiff's request, Then and Kithcart moved Plaintiff's handcuffs to a more comfortable position in front of her body. *Id*. Objectively, Then and Kithcart's actions in handcuffing Plaintiff were reasonable under the circumstances, and they are entitled to summary judgment. *See Groman*, 47 F.3d at 634.

### d.     Creating a danger and undue risk to Plaintiff's life and limb

In Count One of Plaintiff's complaint, Plaintiff alleges that Then and Kithcart unlawfully and unjustifiably created a "danger and undue risk to Plaintiff's life and limb." Compl. at 9. Plaintiff's complaint contains little factual support for her assertions, but presumably this claim relates to her statement that,

> [A]s a result of Defendants [sic] conduct, Plaintiff became overwhelmed and attempted to call her therapist. Defendants at this time prevented Plaintiff from doing so and proceeding in a forceful and unlawful manner to grab Plaintiff and push her into a wall, yelling at her and puling at her arms. This resulted in Plaintiff descending into a dissociated and psychotic state.

*Id.* at 6. As discussed in greater detail above, Plaintiff's statement that she was attempting to call her therapist is not supported by the great weight of the evidence before the Court. Moreover, Then and Kithcart's efforts to prevent the Plaintiff from fleeing did not "violate clearly established statutory or constitutional rights on which a reasonable person would have known." *See Harlow*, 457 U.S. at 818. Accordingly, Then and Kithcart are entitled to summary judgment in their favor.

### e. Falsely arresting and imprisoning Plaintiff

In Counts One and Three of her complaint, Plaintiff alleges that Then and Kithcart violated her state and federal constitutional rights by falsely imprisoning Plaintiff. Compl. at 9, 11. The record, however, does not support such a finding. There is sufficient evidence in the record that Plaintiff assaulted Then and Kithcart on more than one occasion. Defs. SOF at ¶¶ 63-64, 71-73. Both officers report having been kicked by Plaintiff, and Defendants provided photographic evidence demonstrating injuries allegedly caused by Plaintiff. *Id.* at ¶¶ 64, 74. There are several statements in the audio recording from the night of the incident where Then and Kithcart note that they have been kicked, and both provided statements indicating that Plaintiff spat on them. *Id.* at ¶¶ 63-64, 71-73, 86. Accordingly, the Court is not persuaded that Then and Kithcart's decision to incarcerate Plaintiff violated a "clear established statutory or constitutional rights on which a reasonable person would have known." *See Harlow*, 457 U.S. at 818. Accordingly, the officers are entitled to summary judgment in their favor.

### f. Maliciously prosecuting Plaintiff

In Counts One and Three of her complaint, Plaintiff alleges that Then and Kithcart engaged in malicious prosecution in violation of her state and federal constitutional rights. Compl. at 9, 11.  To succeed on a malicious prosecution claim under §1983, a plaintiff "must show that:

> (1) the defendant initiated a criminal proceeding;
> (2) the criminal proceeding ended in plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009).  Here, as discussed in greater detail above, Then and Kithcart had probable cause to believe that Plaintiff committed a crime, thereby justifying her arrest.  Accordingly, Plaintiff fails to meet the elements of *Kossler*, and Then and Kithcart are entitled to summary judgment as to Plaintiff's federal malicious prosecution claim. *See id.*  The New Jersey Civil Rights Act is analogous to 42 U.S.C. §1983, so Then and Kithcart are also entitled to summary judgment as to Plaintiff's state constitutional claim. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011) ("This district has repeatedly interpreted NJCRA analogously to § 1983").

## g.  Denying Plaintiff the Equal Protection of the Law

In Counts One and Two, Plaintiff alleges that Then and Kithcart denied "Plaintiff the Equal Protection of the Law" in violation of Plaintiff's state and federal civil rights. *See* Compl. at 9-11.  "The state standard for equal protection is the same standard that is used under the federal constitution." *Feriozzi Co., Inc. v. City of Alt. City*, 266 N.J. Super 124, 138 n. 2 (1993) (citing *Levine v. Institutions & Agencies Dep. of N.J.*, 84 N.J. 234, 257 (1980)).  To succeed on an equal protection claim, a plaintiff must demonstrate that she received "different treatment from that received by other individuals similarly situated" and "prove the existence of purposeful

14

discrimination." *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (internal quotations omitted). Here, Defendant concedes that Plaintiff was "transported to the hospital because of her disability." Defs. Br. at 19. However, Plaintiff must still demonstrate "purposeful discrimination," which she fails to do. *See Andrews*, 895 F.2d at 1478. Moreover, there is substantial evidence in the record demonstrating that Then and Kithcart acted out of concern for Plaintiff's well-being rather than an attempt to discriminate against her. Then and Kithcart went to Plaintiff's home only after the urging of Plaintiff's therapist to conduct a wellness check. *See* Defs. SOF at ¶ 23. The officers asked Plaintiff for clarification regarding her statements. *See id*. at ¶¶ 48, 50. And, as discussed above, a reasonable officer would believe that involuntary commitment was then justified pursuant to N.J.S.A. 30:4-27.6. Accordingly, Plaintiff's Equal Protection claims cannot survive summary judgment.

### h.      Interfering with Plaintiff's substantive due process rights

In Count Two, Plaintiff alleges that Then and Kithcart interfered with Plaintiff's enjoyment of her "substantive due process rights" in violation of her state and federal constitutional rights. Compl. at 10-11. Plaintiff's state and federal due process claims utilize the same standard. *See Nat'l Amusements, Inc. v. Borough of Palmyra*, 843 F. Supp. 2d 538, 544 (D.N.J. 2012). The test is whether the behavior of the governmental officer, as a matter of law, "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Here, Then and Kithcart entered Plaintiff's home to conduct a welfare check, restrained her when they reasonably believed she was going to flee, and took her to a hospital for a mental health evaluation after she repeatedly exclaimed her desire to die. *See* Defs. SOF at ¶¶ 23, 59, 79, 80. The "State has an interest in preventing suicide." *Washington*, 521 U.S. at 730. Then and Kithcart's actions here in

accordance with that interest cannot be said to "shock the conscience." *See County of Sacramento*, 523 U.S. at 847. Accordingly, Plaintiff's due process claims cannot survive summary judgment.

### i.    Interfering with Plaintiff's privileges and immunities

In Count Two of her Complaint, Plaintiff alleges that Then and Kithcart's actions deprived Plaintiff of the "privileges and/or immunities secured" by the state and federal constitutions. Compl. at 10-11. Plaintiff does not provide any factual support for this assertion. And, as the Court held above, Then and Kithcart's conduct at the time of the events giving rise to this action does not violate any of Plaintiff's "clearly established statutory or constitutional rights." Then and Kithcart had a right to enter Plaintiff's home, detain her when they reasonably believed she was attempting to flee, and take her to the hospital for a mental health evaluation. In light of these findings, Then and Kithcart are also entitled to summary judgment as to Plaintiff's privileges and immunities claim. *See Harlow*, 457 U.S. at 818.

### j.    Conspiring to falsely arrest, maliciously prosecute, and use excessive force against Plaintiff

Finally, in Count Three of her Complaint, Plaintiff alleges that Then and Kithcart conspired to violate her "civil rights by falsely arresting Plaintiff, illegally seizing the person of Plaintiff, maliciously prosecuting Plaintiff, [and] using excessive force." Compl. at 11. As discussed above, Then and Kithcart's conduct in each of these underlying "offenses" does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow*, 457 U.S. at 818. Accordingly, Plaintiff's claim alleging that Then and Kithcart conspired to commit these acts cannot survive summary judgment, and Defendant Then and Kithcart are entitled to summary judgment in their favor on Counts One, Two and Three of Plaintiff's complaint.

16

### 2.   Claims Against Coleman

In Counts One and Three of her complaint, Plaintiff alleges that Coleman failed to adequately "train and supervise" Then and Kithcart and that he maintained a "policy, practice, or custom of constitutional violations." *See* Compl. at 48, 12.  For the reasons that follow, Defendants are entitled to summary judgment on each of these counts.

#### a.   Failing to adequately train and supervise

In Counts One and Three of her complaint, Plaintiff claims that Coleman is responsible for Then and Kithcart's alleged state and federal constitutional violations because Coleman failed to "train and supervise" his employees and was "grossly negligent in the supervision of his subordinates." *See id.*  A plaintiff is permitted to bring a civil rights action against a supervisor, but only if the plaintiff can demonstrate that the supervisor was personally involved in the "alleged wrongs." *See Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "[L]iability cannot be predicated solely on the operation of *respondeat superior*." *Id.*  A plaintiff can satisfy the "personal involvement" requirement by demonstrating either: 1) the parties committing the alleged wrong acted at the personal direction of their supervising officer; 2) the officer had "actual knowledge and acquiescence, an allegation that must be made with appropriate particularity," or 3) the officer exhibited "intentional conduct, deliberate or reckless indifference to the [victim's] safety, or callous disregard on the part" of the supervisor. *See Rode*, 845 F.2d at 1207; *Davidson v. O'Lone*, 752 F.2d 817, 828 (3d Cir. 1984).

Here, even assuming Plaintiff succeeded on her constitutional claims against Then and Kithcart, Plaintiff's allegations against Coleman fail on their merits.  Plaintiff never alleges, nor do the facts before this Court support, a finding that Then and Kithcart acted at the direction of Coleman. *See Rode*, 845 F.2d at 1207.  Moreover, there is no evidence in the record indicating

17

that Coleman knew and acquiesced to their alleged misconduct or somehow disregarded the potential for Then and Kithcart to violate Plaintiff's constitutional rights. *See Rode*, 845 F.2d at 1207; *see also Davidson*, 752 F.2d at 828. Then and Kithcart were both in compliance with their required training and there is no indication that either were ever subject to a civil rights action or disciplinary action. *See* Defs. SOF at ¶¶ 98-99. Therefore, Coleman is entitled to summary judgment in his favor on Plaintiff's negligent training and supervision claims.[3]

### b. Maintaining a policy, practice, or custom of constitutional violations

In Counts One and Three of Plaintiff's complaint, Plaintiff seeks damages from Coleman alleging that the "actions of [Then and Kithcart] constituted a policy, practice, procedure or custom of the Andover Township Police Department in that those actions are part of a pattern of failing to implement standard police practice and/or procedure in dealing with mentally ill individuals during police investigations." Compl. at 9, 12. Government officials "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). To succeed on a claim, however, a plaintiff must demonstrate that the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691.

Here, even assuming Plaintiff's constitutional claims against Then and Kithcart were allowed to proceed, Plaintiff's broad accusations against Coleman fall well short of the burden set forth in *Monell*. *See id.* at 690-91. Plaintiff does not provide any evidence of a "permanent and well settled" custom of permitting discrimination against the mentally ill. *See id.* at 691. In fact, Plaintiff does not offer even one other instance of discrimination in support of her claims. Plaintiff's remark that there is a "pattern of failing to implement standard police practice and/or

---

[3] In light of the Court's findings on the merits of Plaintiff's claims, it need not address Defendant's argument that Coleman is protected by qualified immunity.

procedure in dealing with the mentally ill" is insufficient to salvage her claim, as it is not supported by the facts before the Court. *See* Compl. at 9. The police department has two Standard Operating Procedures ("SOP") specifically addressing the mentally impaired—a "1989 SOP captioned 'Mental Health'" and a "1991 SOP captioned 'Involuntary Commitments.'" Defs. SOF at ¶ 92. In addition, police officers are required to attend "semi-annual training in use of force and domestic violence." *Id.* at ¶ 94. Accordingly, Plaintiff's claims have no factual basis, and Defendants are entitled to summary judgment in their favor.

### 3.     Claims Against Andover Township

In Counts One and Three, Plaintiff alleges that Andover Township failed to adequately "train and supervise" its employees and "created and/or permitted a policy or custom under which constitutional practices occurred as evidenced by, *inter alia*, the affirmative conduct of Defendants." Compl. at 9-10, 12. Defendants argue that Plaintiff's constitutional claims against Andover Township fail because the "plaintiff has not brought forth sufficient evidence to meet the standard[s]" of *Simmons v. City of Philadelphia* and *Monell v. Dep't of Social Servs*. Defs. Br. at 23. For the reasons set forth below, the Court agrees.

#### a.     Failing to adequately train and supervise

Plaintiff alleges that Andover Township "failed to train and supervise [its] employees" and was "grossly negligent in [its] supervision." *See* Compl. at 9-10, 12. A municipality is only liable for failing to properly train its officers under very limited circumstances. *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1060 (3d Cir. 1991). A plaintiff must demonstrate that: 1) a city policymaker made a "deliberate choice to follow a course of action . . . made from among various alternatives;" and 2) the policymaker's choice reflects a "deliberate indifference to the constitutional rights" of the plaintiff. *See id.* (internal quotations omitted). Here, Plaintiff has

not presented any evidence demonstrating that any policymaker made a choice not to train or supervise Then and Kithcart, nor did so with "deliberate indifference" towards Plaintiff's rights. *See id.* There is also no indication in the record that Then or Kithcart had a propensity for committing constitutional violations, which could foreseeably warrant additional training, nor is there any indication that either officer failed to complete any required training. *See id.* Accordingly, Defendants correctly assert that Plaintiff's "training and supervision claims fail under *Simmons.*" *See id.*

### b.   Maintaining a policy, practice, or custom of constitutional violations

Plaintiff alleges that Andover Township "created and/or permitted a policy or custom under which unconstitutional practices occurred." *See* Compl. at 10, 12. A plaintiff is permitted to bring suit against a local municipality under the federal and New Jersey civil rights acts. *See Monell*, 436 U.S. at 690-91 (stating that Congress intended "local government units to be included among those persons to whom § 1983 applies"); *see also Trafton*, 799 F. Supp. 2d at 443-44 (stating that the New Jersey Civil Rights Act is analogous to 42 U.S.C. § 1983). This cause of action is limited—a plaintiff may not sue a municipality "for an injury inflicted solely by its employees or agents." *See Monell*, 436 U.S. at 694. Instead, a plaintiff must demonstrate that the constitutional deprivation was caused by a "custom," although the custom need not be formally approved. *Id.* at 690-91 (holding that a municipality "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels.").

Here, Defendants are entitled to summary judgment in their favor for two reasons. First, as discussed above Plaintiff has not established any underlying "constitutional deprivation" on which to base her claims against Andover Township. Second, even if Plaintiff did meet this

burden, the facts do not support a finding that any policy, practice, or custom caused such a violation. *See id.* at 690-91. On the contrary, there is substantial evidence on the record demonstrating the strength of Andover Township's mental health policies and customs. Andover Township has two long standing SOPs specifically designed to address mental illness. *See* Defs. SOF at ¶ 92. One of the SOPs states that its purpose is to "establish uniform procedures for . . . police personnel in dealing with mentally disturbed people in need of psychiatric commitment." Defs. Br. at 26. Then testified that he received copies of Andover Township's policies regarding the mentally ill, and Kithcart testified that he received training on the subject at the police academy. *See* Kithcart Dep. at 24:2-26:17; Then Dep. at 28:4-29:22.

The only evidence Plaintiff provides suggesting any weakness in Andover Township's policies is a report by Plaintiff's expert witness, James Williams. In Williams' report, Williams concluded that Andover Township failed to comply with a New Jersey mandate requiring Andover Township to provide annual training programs in "Verbal and Non-Verbal Communications," which Williams explained would include instructions on "how to handle persons in situations of this case incident." *See* Williams Report at 15. Williams' findings are not supported by the facts before this Court. The New Jersey Attorney General Guidelines "do not mandate specific, ongoing training in communication with the mentally ill." Defs. Br. at 27 (citing Defs. Expert Report at 28); *see also* Defs. Ex. 33 (listing the two mandatory in-service trainings—use of force and domestic violence). The only mandated annual trainings are in "use of force" and domestic violence. Defs. Ex. 33. Then and Kithcart complied with both. *See* Defs. SOF at ¶¶ 98-99. Accordingly, William's testimony is "pure speculation" and is not persuasive. *See Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996). And, Defendants are entitled to summary judgment in their favor.

21

**B.    Count Four – False Imprisonment/False Arrest**

In Count Four, Plaintiff alleges that "Defendants wrongfully, unlawfully, maliciously, and without any warrant or pretense of legal process, detained, restrained, arrested and confined Plaintiff against her will." Compl. at 13.  Plaintiff seeks damages under theories of "false imprisonment and false arrest," which are "merely separate names for the same tort." *See* Compl. at 13; *see also Roth v. Golden Nugget Casino/Hotel, Inc.*, 576 F. Supp. 262, 265 (D.N.J. 1983) (citing *Price v. Phillips*, 90 N.J. Super. 480, 484 (App. Div. 1966).  As discussed above, Plaintiff was detained on two separate occasions.  First, she was taken to the hospital for a mental health evaluation.  Second, she was arrested for assaulting Then and Kithcart and was transported to a county jail.  Defendants allege that one of the two defenses to an action for false imprisonment—legal justification or probable cause—is applicable to each of these arrests. Defs. Br. at 30 (citing *Hayes v. Mercer County*, 217 N.J. Super. 614, 623 (App. Div. 1987)).  The Court agrees.

Plaintiff's first arrest was "legally justified." *See Hayes*, 217 N.J. Super. at 623.  Then and Kithcart are allowed to take "custody of a person and take the person immediately and directly to a screening service if . . . [o]n the basis of personal observation, the law enforcement officer[s] ha[ve] reasonable cause to believe the person is in need of involuntary commitment to treatment." *See* N.J.S.A. 30:4-27.6.  Here, as discussed in greater detail above, Then and Kithcart had reasonable cause to believe Plaintiff was in need of involuntary commitment. Accordingly, Then and Kithcart were legally justified in arresting Plaintiff. *See Hayes*, 217 N.J. Super. at 623. *See also* N.J.S.A. 30:4-27.7 (granting immunity to officers "acting in good faith . . . who take[] reasonable steps to assess, take custody of, detain or transport an individual for the purposes of mental health assessment or treatment.").

22

And, Plaintiff's second arrest was pursuant to "probable cause." *See Hayes*, 217 N.J. Super. at 623. As discussed above, it is unclear whether a judge issued a warrant for Plaintiff's arrest before or after she was taken into custody. Nonetheless, the arresting officer had "probable cause" to believe she had committed a crime—assaulting Then and Kithcart—thereby permitting her warrantless arrest. *See Hayes*, 217 N.J. Super. at 623; *see also Devenpeck*, 543 U.S. at 152 (stating that a warrantless arrest is permissible where the arresting officer has probable cause to believe the person committed a crime). Accordingly, Defendants are entitled to summary judgment in their favor as to Count Four of Plaintiff's complaint.

### C.    Count Five – Civil Conspiracy

In Count Five of her complaint, Plaintiff alleges that Defendants engaged in a "civil conspiracy to subject Plaintiff to false arrest, false imprisonment and or malicious prosecution." *See* Compl. at 14. In New Jersey, a civil conspiracy claim consists of four elements, 1) two or more people; 2) proof that the people are acting in concert pursuant to a real agreement; 3) the existence of a purpose to "commit an unlawful act, or to commit a lawful act by unlawful means;" and 4) damages. *See Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005). Here, Plaintiff alleges each of these elements but does not provide any facts in support of these claims. *See* Compl. at 13-14. For example, there is no evidence supporting Plaintiff's assertion that Defendants reached an agreement or acted with the unlawful purpose of subjecting "Plaintiff to false arrest, false imprisonment and or malicious prosecution." *See Banco Popular N. Am.*, 184 N.J. at 177. Accordingly, Defendants are entitled to summary judgment in their favor on Count Five of Plaintiff's complaint.

### D.    Count Six – New Jersey Tort Claims Act

In Count Six of the complaint, Plaintiff alleges that Andover Township is liable for the actions of its employees pursuant to the New Jersey Tort Claims Act. *See* Compl. at 14-15. N.J.S.A. 59:2-2 provides that a "public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment." *See Wright v. State*, 169 N.J. 422, 450 (2001). "The primary liability imposed on public entities is that of respondeat superior." *Tice v. Cramer*, 133 N.J. 347, 355 (1993). If an officer is liable for acts within the scope of his employment, so is the entity; conversely, when the officer is not liable, "neither is the entity." *See id.* Moreover, an officer is not liable for the underlying offense when they are protected by an "immunity provided by law." *See id.* (internal quotations omitted).

Here, Defendants are entitled to summary judgment on each of Plaintiff's first five counts. Plaintiff's claims either failed on their merits or were prohibited by virtue of a state or federal immunity. Therefore, the individual defendants are not liable to the Plaintiff for any of her alleged damages. "[W]hen the public employee is not liable, neither is the entity." *See id.* Accordingly, Defendants are entitled to summary judgment in their favor on Count Six of Plaintiff's complaint.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in its entirety. An appropriate Order accompanies this Opinion.


DATED: December 3 2011

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE